# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER BASILE,<br><br>                  Plaintiff,<br><br>v.<br><br>AARON BROTHERS, INC. et al.,<br><br>                  Defendants. | Case No.: 3:17cv485-L(NLS)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

    Pending before the Court in this putative class action for violation of California wages and hours laws is Plaintiff's motion to remand. Defendants filed an opposition and Plaintiff replied. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, Plaintiff's motion is granted.

    Plaintiff filed a complaint in State court asserting numerous California Labor Code violations and violation of California Business and Professions Code § 17200 on behalf of non-exempt employees of Defendants Aaron Brothers, Inc. and Michaels Stores, Inc. Plaintiff alleged that Defendants failed to (1) provide meal and rest breaks as required by law; (2) pay minimum and regular wages, including to cover missed meal and rest breaks; (3) pay overtime wages; (4) indemnify for necessary business expenses; (5)

provide accurate wage statements; and (6) timely pay all wages due upon separation from employment.

Defendants removed the action to this Court under 28 U.S.C. §§1453 and 1446 based on diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015), citing 28 U.S.C. § 1332(d).

In their notice of removal, Defendants asserted that Plaintiff's claims as pled place more than $5 million in controversy. (Not. of Removal at 5.) In her motion to remand, Plaintiff challenges this assertion. She does not dispute that other jurisdictional requirements are met.

Although "Congress intended CAFA to be interpreted expansively, . . . the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197 (citation omitted). This entails "the burden to put forward evidence showing that the amount in controversy exceeds $5 million [and] persuade the court that the estimate of damages in controversy is a reasonable one." *Id.* "[I]f the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.* at 1199. Accordingly, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. With her motion to remand, Plaintiff challenges federal jurisdiction, thus forcing Defendants to meet their burden.

In the first and second causes of action, Plaintiff alleged that Defendants failed to provide the statutory-mandated meal and rest breaks. Defendants contend these claims place $3.6 million at issue. The calculation is based on the evidence that (1) the average shift during the relevant period was 6.42 hours, *i.e.*, long enough to trigger the duty to

2

provide a meal period and a rest period; (2) 91.5 percent of the shifts were longer than 3.5 hours, *i.e.,* long enough to trigger the duty to provide a rest period; and (3) that the employees[1] worked 3.83 days per week on average. (Supp. Decl. of Lisa Anderson ("Anderson Supp. Decl.") ¶¶ 3.b.-d.) In addition, the calculation is based on the assumption of one alleged meal break and rest break violation per employee per week. Plaintiff counters that the assumption is unsupported and unreasonable.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra,* 775 F.3d at 1198 (footnote omitted). "[A]ssumptions cannot be pulled from thin air." I*d.* at 1199.

For the rate of violation, Defendants rely solely on Plaintiff's allegations in the complaint. (Opp'n at 10-11.) This is appropriate, if the allegations support Defendants' calculation. *See Ibarra,* 775 F.3d at 1197 ("In determining the amount in controversy, courts first look to the complaint."); *see also La Cross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("our first source of reference in determining the amount in controversy [is] plaintiff's complaint").

Plaintiff alleged a systematic pattern of violations, a pattern and practice of not providing proper breaks, and that the violations occurred regularly as a result of a common policy and practice. (Opp'n at 10-11, citing Compl. ¶¶ 3, 7, 21, 27, 66 & 72.) Although these allegations indicate that violations were regular, they do not speak to their frequency, and are therefore insufficient to support the assumption of any particular rate of violation. *See Ibarra,* 775 F.3d at 1198-99 ("pattern and practice" and "institutionalized unwritten policy" not sufficient to support assumption that violations occurred at every opportunity). Moreover, Plaintiff's allegations were qualified. (Compl. ¶22 ("Pursuant to Defendants' policies and procedures, . . . employees . . . were regularly

---

[1] All references to employees are to California non-exempt employees.

required to remain on duty at all times during their shift, including their meal period, *unless* relieved by another employee.") (emphasis added); *see also id.* ¶27 (same for rest periods).) Furthermore, employees worked only 3.83 days per week on average. (Anderson Supp. Decl. ¶ 3.d.) Plaintiff's qualified allegations and the short work week further undermine Defendants' assumption that each violation occurred once every week for every employee.

In her third cause of action, Plaintiff alleged that Defendants failed to pay minimum and regular wages. Defendants contend the wage claim places at least $2.4 million at issue.

Defendants base their calculation in part on the assumption of one hour of unpaid time per employee per week. Plaintiff disputes its reasonableness. The assumption is based solely on the complaint. Plaintiff alleged employees incurred unpaid time due to meal break violations and because they were required to work outside their regularly scheduled hours, such as completing their assigned tasks after the end of their scheduled shift time, answering work-related phone calls and text messages when off work, and traveling to other employer locations for training, to help out, and to pick up or drop off merchandise. (Compl. ¶¶ 31-34; 95.) Plaintiff further alleged this off the clock work was performed regularly and as a systematic pattern. (Opp'n at 12, citing Compl. ¶¶ 31-34.)

Although the complaint alleged the circumstances of the violations and their regularity, it does not speak to frequency. Defendants' assumption of one unpaid hour per week per employee is therefore unsupported. It is further undermined by the fact that the average workweek was only 3.83 days per week. (Anderson Supp. Decl. ¶ 3.d.)

In her sixth cause of action, Plaintiff alleged that Defendants did not provide an accurate itemized statement with each wage payment. Defendants contend that this claim places at least $500,000 at issue.[2]

---

[2] Defendants do not address the fourth and fifth causes of action.

Defendants base their calculation on the evidence that they employed at least 450 employees at any time during the relevant time,[3] and paid them bi-weekly. (Decl. of Lisa Anderson in Supp. of Notice of Removal ("Anderson Removal Decl.") ¶¶ 8.f. & 10.) They further assumed that each wage statement was inaccurate. Plaintiff disputes this assumption.

Defendants present no evidence in support of their assumption, but rely on Plaintiff's allegations of a systematic pattern of violation and that the underlying meal and break violations caused the wage statements to be inaccurate. (Opp'n at 14-15, citing Compl. ¶ 3.) As discussed above, Plaintiff's allegations regarding the circumstances giving rise to the violations and their systematic nature do not speak to their frequency. Defendants' assumption is therefore unsupported.

In the seventh cause of action Plaintiff alleged that Defendants did not timely pay all wages due upon separation from employment and that they made final wage payments with a pay card. Defendants argue that the claim puts $3.9 million at issue. Plaintiff counters that the amount is unsupported.

The statutory penalty for this violation is calculated by multiplying an employee's daily wages by the number of days the violation continued, up to 30 days. Cal. Labor Code § 203(a). Defendants base their calculation on the evidence that 1,816 employees left employment since February 1, 2014, that the average hourly rate at all times since February 1, 2013 has been at least $12, and that the average shift since February 1, 2013 has been 6.24 hours. (Anderson Supp. Decl. ¶ 3.a., b. & e.; *see also* Anderson Remand Decl. ¶¶ 8.d. & e.) They assume that a violation occurred with each final payment for at least 30 days, which would allow for the maximum penalty.

One of Plaintiff's theories of the violation alleged in the complaint is that the statute was violated because the final paycheck was always made with a pay card. (*See*

---

[3] Based on the statute of limitations, the relevant time commenced February 1, 2016. (Opp'n at 14.)

Compl. ¶¶ 42 & 141.)  Because all employees leaving Defendants' employment were paid with a pay card, Defendants' assumption that all separated employees' rights were violated for 30 days is reasonable.  However, Defendants' average shift evidence is not on point.  Defendants calculated the average starting with February 1, 2013; however, the alleged violations reach only to February 1, *2014*.  (*Cf.* Anderson Supp. Decl. ¶ 3.b. (average shift "since February 1, 2013") & *id.* ¶ 3.e (number of separating employees "since February 1, 2014"); Opp'n at 5; Compl. ¶48 (since February 1, 2014.)[4]  Because of the uncertainty regarding the average shift for purposes of calculating the employees' daily wages, Defendants' ultimate calculation is unsupported.

      Finally, Defendants argue that Plaintiff's request for attorneys' fees places an additional $1.7 million at issue.  Statutory attorneys' fees may be aggregated to arrive at the amount in controversy.  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).  Plaintiff argues, however, that the calculation is not properly supported.  Defendants calculated attorneys' fees based on the general fund theory of recovery for class counsel's fees.  (*See* Opp'n at 16, citing *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990), and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).)  They contend Plaintiff's counsel would be entitled to 25% of recovery.  Based on their estimate of the amount in controversy as to each claim they cover in their opposition brief, they claim that $1.7 million is a reasonable estimate.  (Opp'n at 17-18.)  However, Defendants did not meet their burden to establish the amount in controversy as to any of the claims they discussed in their opposition.  Their fee calculation is therefore unsupported.

---

[4]    Although Plaintiff alleges a typical shift of more than six hours per day (Compl. ¶ 68), this allegation does not apply to waiting time penalty allegations (*cf. id.* ¶ 47 (non-exempt class starting February 1, 2013) & ¶48 (waiting time penalties subclass starting February 1, 2014).)

6

For the foregoing reasons, Defendants did not meet their burden by a preponderance of the evidence to show that the amount in controversy exceeds $5 million. Plaintiff's motion to remand is therefore granted.

**IT IS SO ORDERED.**

Dated: January 31, 2018

_____
Hon. M. James Lorenz
United States District Judge